Jodi Lynn **MAAS**, Respondent
(C1–83–1186),

Roger E. Lund, as Trustee for the Heirs
and Next of Kin of Janice Marie Lund,
decedent, Respondent (C7–83–1189),

v.

**ALLSTATE INSURANCE
COMPANY, Appellant.**

Nos. C1–83–1186, C7–83–1189.

Supreme Court of Minnesota.

April 5, 1985.

Fredrick W. Morris, Richard L. Evans, Minneapolis, for appellant.

Peter W. Riley, Michael L. Weiner, Francis Li, Minneapolis, for Lund.

John E. Wasche, Minneapolis, for Maas.

KELLEY, Justice.

The trial court, in granting summary judgment against Allstate Insurance Company (Allstate), held that the insurer must afford underinsured and uninsured coverage on five vehicles and that such coverage could be stacked. The trial court reached this conclusion even though the owner of the five vehicles had purchased underinsured coverage on only one of the vehicles, and even though it found the other vehicle in the accident was not uninsured. We reverse in part and affirm in part.

Francis Jaeger owned five vehicles. He insured each of them with Allstate.[1] Uninsured motorist coverage was purchased on all five vehicles, but underinsured coverage was purchased on only one vehicle. While a policy was in force, the Jaeger's 1965 Ford, driven by his daughter, collided with a pickup truck owned and driven by Terry Duce Davis. The liability of Davis in causing the accident was never contested. Carol Lynn Werner, Jodi Lynn Maas and Janice Marie Lund were passengers in the Jaeger vehicle. As a result of the collision, Janice Lund and Elizabeth Jaeger died and Carol Werner and Jodi Maas were injured.

Davis's pickup was likewise insured by Allstate. The Davis policy had been written in California and provided liability limits of $15,000 per person and $30,000 per accident. These liability limits comport with the minimum requirements of California law. However, it did not comply with Minnesota law because Davis's policy, on its face, did not provide the minimum liability coverage required by Minn.Stat. §§ 65B.41 to 65B.71 (1982) ($25,000 per person and $50,000 per accident). Prior to the ruling of the trial court in this case Allstate, pursuant to Minn.Stat. § 65B.50 (1984), had certified that under Davis's policy it would provide the Minnesota statutory minimum for accidents occurring in Minnesota.

Jodi Maas and Roger Lund, trustee for the heirs and next of kin of Janice Marie Lund, deceased, sought recovery from Allstate in separate actions under the uninsured and underinsured motorist coverage in the Jaeger policy. Because Allstate had agreed to provide Davis with Minnesota's statutory minimum liability coverage, the trial court, in both cases, held that Davis was not an uninsured driver. In reliance only on its reading of the definition section

of Part III of the policy, the trial court did hold that Allstate had contracted to pay, under the uninsured coverage of its policy, if the accident arose out of the use of an insured *or* underinsured automobile. Allstate appeals both decisions, which were consolidated on appeal.

 In the trial court respondents first contended that Davis was "uninsured" because Davis's policy, on its face, failed to provide the minimum coverage required by Minnesota law. As indicated, the trial court rejected this argument because Allstate had certified it would provide the Minnesota minimum liability coverage pursuant to Minnesota law. We agree that the trial court was correct in this determination.

Secondly, respondents argued in the trial court that the language of the Jaeger policy provided for payment of uninsured benefits if injury arose from an accident involving an uninsured *or* underinsured motor vehicle. Clearly, Davis was underinsured. Therefore, respondents contend that under Part III of the policy Allstate must provide both the underinsured coverages, for which Jaeger had paid a premium, plus the uninsured coverage on all five vehicles even though, in fact, due to Allstate's certification, Davis was not uninsured. The trial court agreed with this contention and allowed stacking of both the underinsured and uninsured coverages.[2] We disagree.

In essence, what respondents contend, and what the trial court held, is that certain language contained in Part III of the policy permits a finding that underinsured and uninsured benefits are the same and, therefore, that the uninsured and underinsured coverages can be "stacked." Our reading of the policy provisions compels a contrary conclusion.

1. The facesheet of the Allstate policy has space only for the inclusion of four vehicles; thus, a separate facesheet was prepared to include the fifth. We construe these two documents to be a single policy.

2. Before the trial court, Appellate Allstate conceded that Lund and Maas were insureds under

the Jaeger policy. It also agreed that respondents could "stack" the uninsured motorist coverages for the five Jaeger vehicles *if* Davis was found to be an uninsured motorist. However, Allstate did contend that "underinsured motorist coverage" could not be "stacked."

The Jaeger policy is a so-called "plain language" policy. In reaching its decision, the trial court focused on only the first paragraph of Part III which reads:

Part III

Uninsured Motorists Coverage SS

Underinsured Motorists Coverage SU

We will pay damages for bodily injury, sickness, disease or death which a person insured is legally entitled to recover from the owner or operator of an uninsured auto. Injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured or underinsured auto.

If one limits the reading only to that paragraph, it is indeed arguable that respondents' contention is correct. However, such a focus completely ignores other relevant policy provisions. For example, the very first paragraph of the policy text on page 2 provides:

The coverages of this policy apply only when a specific premium is indicated for them on the declarations page. If more than one auto is insured, a coverage premium will be shown for each auto.

The "SS" and "SU" symbols in the caption of Part III were code symbols used to designate afforded coverages on the declaration sheet. In fact, the policy declaration sheet documents that separate premiums were charged for each coded coverage for each vehicle owned by Jaeger. All five vehicles were coded "SS" (uninsured motorist coverage), but only one vehicle—"vehicle 4," a 1966 Chevrolet—was coded "SU" (underinsured motorist coverage). In addition, following the introductory paragraph in Part III, the policy separately and in detail defines "uninsured motorist" and "underinsured motorist". Nowhere in Part III, or in any other part of the policy, except the declaration sheet, is there any indication of what coverage was contracted for by the Jaegers.

**3.** On appeal Allstate claims Lund and Maas must first exhaust coverage from their own insurers before seeking recovery under coverages purchased by the owner of the involved vehicle for a non-involved vehicle. This issue was nev-

A reading of page 2 together with all of Part III, as well as other sections of the policy defining optional coverages, demonstrates clearly that underinsured coverage would be afforded only if the vehicle causing the damage was underinsured and if a premium had been paid for underinsured coverage. Likewise, uninsured coverage would be recoverable only if the errant vehicle was uninsured and if a premium had been paid for such coverage. In our view this construction is not only sensible but in keeping within a reasonable construction of this "plain language" policy. To adopt the trial court's construction contorts the unambiguous language of the policy. Davis was underinsured; not uninsured. Jaeger only paid a premium for underinsured coverage on one vehicle and since Allstate concedes that respondents are insureds under the policy, we are compelled to conclude that appellant Allstate must afford underinsured motorist coverage which Jaeger paid for on the 1966 Chevrolet automobile.[3]

Reversed in part, affirmed in part.

er raised nor considered by the trial court. Therefore, we decline to consider it. *Thompson v. Barnes,* 294 Minn. 528, 200 N.W.2d 921 (1972).