422 S.E.2d 803

Mary Louise RUSSELL, Individually and As Administratrix of the Estate of Tina Louise Russell, Plaintiff Below, Respondent,

v.

STATE AUTOMOBILE MUTUAL INSURANCE COMPANY,

and

State Automobile Insurance Companies, Defendants Below, Petitioners.

No. 20491.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 1992.

Decided June 29, 1992.

Robert D. Aitchenson, Charles Town, for respondent.

William Richard McCune, Jr., Jackson & Kelly, Charleston, for petitioners.

WORKMAN, Justice:

This case is before the Court upon a certified question[1] posed by the Circuit Court of Jefferson County in a June 13, 1991, order. The certified question is as follows: "If an insured is covered under one (1) policy of automobile insurance which provides underinsured motorist coverage for two (2) separate vehicles and which contains antistacking language, is the insured entitled to stack the coverage?" The lower court answered the certified question in the affirmative. Upon review of the arguments of the parties and all the matters of record submitted before the Court, we disagree with the lower court's answer to this question.

The undisputed facts in this case reveal that on May 1, 1989, a two-car collision occurred in Charles County, Maryland. Tina Louise Russell, the granddaughter of the respondent, Mary Louise Russell, was a passenger in one of the involved vehicles which was owned by William and Judy Halt, but driven by Laura Halt. Both Tina Russell and Laura Halt died from injuries sustained in the collision.

The petitioner, State Automobile Mutual Insurance Company (hereinafter referred to as State Auto), issued an automobile insurance policy to Tina Russell and Mary Louise Russell, the respondent, with effective dates from February 11, 1989, to May 11, 1989. The declarations page of the policy reflects uninsured and underinsured motorist coverage of $20,000 per person, $40,000 per occurrence. Two separate vehicles were listed on the declarations page: (1) a 1980 Mustang, with an annual combined premium for uninsured and underinsured motorist coverage of $6.00, and (2) a 1988 Sunbird, with an annual combined premium of $5.00 for uninsured and underinsured motorist coverage. The premium for the policy included a multi-car discount.

The respondent's suit was prompted when the bodily injury coverage on the insurance policy of Laura Halt was exhausted by settlement of claims including a payment of $33,333.33 to the respondent. The action sought a determination, inter alia, of the coverages available under the respondent's State Auto insurance policy underinsured provisions.

## POLICY LANGUAGE

The petitioner maintains that the insurance policy language involved is clear and unambiguous. The respondent contradicts the petitioner's argument by stating that the policy language is ambiguous.[2]

---

1. In the June 13, 1991, order the circuit court also certified the following question:

    If a policy of automobile insurance provides a per person accidental death benefit payable without regard to fault, may the estate of an insured who died as the result of an automobile accident collect double the per person accidental death benefit when two (2) separate vehicles are insured under the policy?

    The circuit court answered this question in the negative. The respondent did not appeal the lower court's decision regarding this question. Further, the question was withdrawn by the agreement of the parties during oral argument.

2. Other jurisdictions have utilized one of three theories in allowing the intrapolicy stacking of coverage even though the language of the insurance policy appears to prohibit such practice. Those three theories include: 1) the insurance policy language is ambiguous and therefore must be construed against the insurer; 2) the uninsured motorist statute in those jurisdictions supports stacking; and 3) the payment of separate premiums under the single policy entitles the insured to stack coverage. *See Taft v. Cerwonka*, 433 A.2d 215 (R.I.1981); *see also* Annotation, *Combining or "Stacking" Uninsured Motorist Coverages Provided in Single Policy Applicable to Different Vehicles of Individual Insured*, 23 A.L.R. 4th 12, 16–18 (1983 & Supp.1991).

First, it is helpful to examine the language of the insurance policy. The State Auto policy provides, in pertinent part, that "[t]he limit of liability applicable to Uninsured Motorists Coverage or Underinsured Motorists Coverage is the most we will pay regardless of the number of: 1) 'Insureds'[;] 2) Claims made; 3) Vehicles or premiums shown in the Schedule or in the Declarations; or 4) Vehicles involved in the accident."

This Court has previously held that "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syllabus, *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970); *accord* Syl. Pt. 2, *Buckhannon–Upshur County Airport Auth. v. R & R Coal Contracting, Inc.*, 186 W.Va. 583, 413 S.E.2d 404 (1991). Further, in syllabus point 1 of *Soliva v. Shand, Morahan & Co.*, 176 W.Va. 430, 345 S.E.2d 33 (1986), we stated that the "[l]anguage in an insurance policy should be given its plain, ordinary meaning."

■ Upon review of the above-mentioned pertinent insurance policy language, we find that it clearly and unambiguously states that the limit shown on the declarations page is the maximum State Auto will pay for underinsured motorist coverage for any one accident under that policy, regardless of the number of premiums paid or vehicles shown on the declaration page.[3] Because the limiting language is clear and unambiguous, the inquiry becomes one of whether the language is contrary to statute or public policy. *See Nationwide Mut. Ins. Co. v. Scarlett*, 116 Idaho 820, 780 P.2d 142 (1989); *Hoffman v. United Serv. Auto. Ass'n*, 309 Md. 167, 179, 522 A.2d 1320, 1326 (1987); *Moore v. Metro. Property & Liab. Ins. Co.*, 401 Mass. 1010, 519 N.E.2d 265 (1988); *Maas v. Allstate Ins. Co.*, 365

N.W.2d 256 (Minn.1985); *Gelinas v. Metro. Property & Liab. Ins. Co.*, 131 N.H. 154, 551 A.2d 962 (1988).

## THE STATUTE

The petitioner next asserts that the limiting language of the insurance policy satisfies the mandates of the underinsured motorist statute and is not contrary to that statute. The respondent, however, maintains that the policy language conflicts with the spirit and intent of the statute.

■ West Virginia Code § 33–6–31(b) (1992) provides, in pertinent part, that no policy of insurance shall be issued or delivered in this state unless

such policy or contract ... provide[s] an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy.

*Id.* § 33–6–31(b).

It is undisputed that the offer of underinsured motorist coverage was made and accepted in this case according to the prescriptions of West Virginia Code § 33–6–31. Further, it is also clear that the statutory provision applies to each *policy* issued in the state. The statute does not mandate that the amount of coverage be increased if the policy covers multiple vehicles. Further, the pertinent statutory provision does not prohibit an insurer from limiting underinsured motorist coverage to the limits of bodily injury liability coverage where multiple vehicles are listed on the same insur-

---

**3.** Since this Court has concluded that the language of the insurance policy is unambiguous, there is no reason to discuss petitioner's argument regarding the doctrine of reasonable expectations. In *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 742, 356 S.E.2d 488, 496 (1987) this Court concluded that the

doctrine of reasonable expectation was only applicable to those cases where the language of the insurance policy was found to be ambiguous. *Accord Buckhannon–Upshur County Airport Auth. v. R & R Coal Contracting, Inc.*, 186 W.Va. at 588 n. 10, 413 S.E.2d at 409 n. 10.

ance policy. *See* W.Va.Code § 33–6–31(k) [4]; *see generally LeCuyer v. Metro. Property & Liab. Ins. Co.*, 401 Mass. 709, 519 N.E.2d 263 (1988); *Sanders v. St. Paul Mercury Ins. Co.*, 148 Vt. 496, 536 A.2d 914 (1987).

The liability coverage provided by the policy issued to Tina Russell was $20,000 per person, $40,000 per occurrence. The underinsured motorist coverage provided by the policy also equals $20,000 per person and $40,000 per occurrence. Consequently, the policy meets the requirements mandated by West Virginia Code § 33–6–31.

### PUBLIC POLICY

Finally, the petitioner asserts that the language of the insurance policy is not contrary to the public policy of this state. The respondent, on the other hand, maintains that the anti-stacking language of the insurance policy is void as against public policy.

Due to the requirements of West Virginia Code § 33–6–31(b), we held in syllabus points 3 and 4 of *Bell v. State Farm Mutual Automobile Insurance Co.*, 157 W.Va. 623, 207 S.E.2d 147 (1974) that anti-stacking provisions in automobile insurance policies applicable to *uninsured* motorist endorsements were void and ineffective under the statute. Then, this Court in *State Automobile Insurance Co. v. Youler*, 183 W.Va. 556, 564, 396 S.E.2d 737, 745 (1990), recognized that the legislature has articulated a strong public policy in this state that "in uninsured or underinsured motorist cases ... the injured person [should] be *fully compensated* for his or her *damages* not compensated by a negligent tortfeasor, up to the limits of the uninsured or underinsured motorist coverage." *See* W.Va. Code § 33–6–31(b).

In *Youler*, this Court answered a certified question dealing with whether "the limits of more than one underinsured motorist coverage may be combined or stacked by an insured." at 563, 396 S.E.2d at 744. We held that

so-called 'antistacking' language in automobile insurance policies is void under *W.Va.Code*, 33–6–31(b), as amended, to the extent that such language is purportedly applicable to uninsured or underinsured motorist coverage, and an insured covered simultaneously by two or more uninsured or underinsured motorist policy endorsements may recover under all of such endorsements up to the aggregated or stacked limits of the same, or up to the amount of the judgment obtained against the uninsured or underinsured motorist, whichever is less, as a result of one accident and injury.

*Id.* at 565, 396 S.E.2d at 746 and Syl. Pt. 3.

However, in footnote 2 of *Youler*, this Court recognized the existence of two policies and indicated that no issue was raised regarding the premiums paid for the two policies as compared with the premium costs if only one policy had been issued. *Id.* at 559, 396 S.E.2d at 740. Further, in syllabus point 3 of *Youler*, the Court specifically limits its holding to cases where the insured is "covered simultaneously by *two or more* ... underinsured motorist policy *endorsements....*" (emphasis added). Thus, the *Youler* decision does not govern the instant situation where only one policy is involved.

■ In syllabus point 3 of *Deel v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92 (1989), we held that "[i]nsurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes." Therefore, we conclude that the present case is not controlled by our decision in *Youler* and accordingly hold that West Virginia Code § 33–6–31 does not forbid the inclusion nor the application of an anti-stacking provision in an automobile insurance policy where a single insurance policy is issued by

---

**4.** West Virginia Code § 33–6–31(k) specifically provides that "[n]othing contained herein shall prevent any insurer from also offering benefits and limits other than those prescribed herein, nor shall this section be construed as preventing any insurer from incorporating in such terms, conditions and exclusions as may be consistent with the premium charged."

a single insurer and contains an underinsured endorsement even though the policy covers two or more vehicles. Under the terms of such a policy, the insured is not entitled to stack the coverages of the multiple vehicles and may only recover up to the policy limits set forth in the single policy endorsement.

In applying this principle to the present case it is easily discernable that the reason a single policy was issued rather than multiple policies was that the premium for underinsured motorist coverage on the second vehicle was set at a lesser rate than the premium for the first vehicle. Furthermore, because of the multi-car discount given, it is obvious that the insured appellee bargained for only one policy and only one underinsurance motorist coverage endorsement. This multi-car discount is of particular import since it signifies that the respondent was receiving a reduced rate on his automobile insurance in return for taking out only one policy instead of two. Meanwhile, the insurer was assuming an increased risk of injury which could occur while the insured was occupying the second vehicle as consideration for the second premium. The insured was therefore receiving the benefit of that which he bargained for and should not receive more. Had this multi-car discount not been given by the insurer and had the insured paid a full premium for both vehicles, a different result may have been reached by this Court. Consequently, the respondent's recovery for underinsured motorist coverage is limited to $20,000. Thus, the certified question is answered in the negative.

Having answered the certified question, we dismiss this case from the docket of this Court and remand the case to the Circuit Court of Jefferson County for further proceedings consistent with this opinion.

Certified question answered; Case remanded.