ALLSTATE INSURANCE COMPANY, Plaintiff,

v.

Judy Ellen ASHLEY and Tom Ashley, Defendants.

Civ. A. No. 2:93–0081.

United States District Court, S.D. West Virginia, Charleston Division.

Oct. 8, 1993.

Benjamin L. Bailey and Anthony A. Damiani, Bowles, Rice, McDavid, Graff & Love, Charleston, for plaintiff.

John R. Mitchell, Sr., Charleston, for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are cross-motions for summary judgment filed by the Plaintiff and Defendants. For reasons discussed below, the Court concludes the Defendants may not stack their underinsured motorist coverage. The Court therefore GRANTS the Plaintiff's motion for summary judgment, and DENIES the Defendants' motion for summary judgment.

Under *Rule 56(c)* of the Federal Rules of Civil Procedure, summary judgment is proper only:

> "[I]f the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."

A principal purpose of summary judgment is to isolate and dispose of meritless litigation. *Celotex v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party has the initial burden of showing the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). If the moving party meets its initial burden, the burden then

shifts to the nonmoving party to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552. To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must offer evidence showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. Based on this standard the Court grants the Plaintiff's motion for summary judgment.

In December, 1989, Defendant Judy Ashley had an automobile accident with an individual named Anthony Payne. Ms. Ashley was driving a truck insured by Allstate, under a policy listing Defendant Tom Ashley as the insured. Pursuant to the terms of the policy, Ms. Ashley was also an Allstate insured.

Mr. Payne's insurance policy provided $50,000 in liability coverage. The Defendants ultimately accepted this amount in full settlement of their claims against Mr. Payne and his insurance company. Because Ms. Ashley's damages exceeded $50,000, she qualified as an underinsured motorist under her Allstate policy.

The Defendants insure five vehicles with Allstate, under policies which provide underinsured coverage for bodily injuries of $100,000 for each person and $300,000 for each accident. Four of these vehicles are listed on one declaration sheet, under one policy number, while one vehicle is listed on a separate declaration sheet under a different policy number.

The Defendants claim underinsured coverage for all five vehicles may be "stacked," for total coverage of $500,000. Allstate claims stacking is precluded under policy terms, and that the Defendants are covered by only one policy insuring five vehicles. Allstate seeks a declaratory judgment limiting total underinsured coverage to $100,000.

The Court first notes that " '[i]t is the province of the Court, and not of the jury, to interpret a written Contract.' " *Tri-State Asphalt Products, Inc. v. Dravo Corporation*, 186 W.Va. 227, 232, 412 S.E.2d 225, 230 (1991) (citation omitted). Clear and unambiguous provisions of a contract are " 'not subject to judicial construction or interpretation ... [and] full effect will be given to the plain meaning intended.' " *Russell v. State Auto. Mut. Ins. Co.*, 188 W.Va. 81, 422 S.E.2d 803, 805 (1992) (citation omitted). As a general rule, the " 'language of an insurance policy should be given its plain, ordinary meaning.' " *Id.*, 422 S.E.2d at 805 (citation omitted).

The Court notes the following language from Allstate's policy with the Defendants:

"Non–Duplication of Benefits. There will be no duplication of payments for the same elements of loss if more than one ... Underinsured Motorists Insurance coverage applies to the loss.

. . . . .

This provision applies *regardless of the number of motor vehicles insured under this or any other automobile insurance policy.*" (emphasis added)

Giving this language its plain and ordinary meaning, the Court concludes that an insured may not receive more than one payment for an underinsured loss simply because multiple vehicles are covered by an underinsured policy. The policy therefore precludes stacking underinsured coverage for multiple vehicles.

The next issue is whether this anti-stacking language is contrary to public policy. In the *Russell* decision cited above the Court held that "the pertinent statutory provision [W.Va.Code § 33–6–31] does not prohibit an insurer from limiting underinsured motorist coverage to the limits of bodily injury liability coverage where multiple vehicles are listed *on the same insurance policy.*" *Id.* at 806 (emphasis added).[1]

---

1. W.Va.Code § 33–6–31(b) provides that no insurance policy shall be issued in this state unless "such policy or contract ... provide[s] an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without

In *State Auto. Mut. Ins. Co. v. Youler,* 183 W.Va. 556, 396 S.E.2d 737 (1990), the Court held that anti-stacking language is void when two or more policies are involved:

> "[S]o-called 'anti-stacking' language in automobile insurance policies is void under *W.Va.Code,* 33–6–31(b), as amended, to the extent that such language is purportedly applicable to uninsured or underinsured motorist coverage, and an insured covered simultaneously by *two or more uninsured or underinsured motorist policy endorsements* may recover under all of such endorsements up to the aggregated or stacked limits of the same...." *State Auto. Mut. Ins. Co. v. Youler,* 183 W.Va. at 565, 396 S.E.2d at 746; *Russell v. State Auto. Mut. Ins. Co.,* 188 W.Va. at 84, 422 S.E.2d at 806 (emphasis added).

Four of the Defendants' vehicles are clearly covered by one policy and one declaration sheet. Applying the *Russell* decision, an insurance company may preclude stacking underinsured coverage when only one policy is involved. Underinsured coverage under the four car policy is therefore limited to $100,000.

 The next issue is whether coverage under the four car and single car policies may be stacked. As noted above, the *Youler* decision voids policy language which attempts to preclude stacking underinsured coverage for two or more policies. Allstate, however, claims all five vehicles are covered by a single policy. The company has submitted an affidavit stating that Allstate's computer system permits a maximum of four vehicles on one declaration sheet. Any additional vehicles are listed on a separate declaration sheet, and each of these sheets automatically receives a different policy number.[2] Allstate therefore claims that Defendants have only one policy, and are expressly precluded from stacking coverage.

The Court notes that all five vehicles reflect identical coverage and an effective policy date of July 23, 1989. A multi-car discount applies to every vehicle, including the single car listed under a separate policy number.

Based on Allstate's supporting affidavit, the multi-car discount, and the identical coverages and effective dates, the Court concludes that all five vehicles are covered by one policy. The Court particularly notes the multi-car discount, and the following rationale from the *Russell* decision:

> "[B]ecause of the multi-car discount given, it is obvious that the insured appellee bargained for only one policy and only one underinsurance motorist coverage endorsement. This multi-car discount is of particular import since it signifies that the respondent was receiving a reduced rate on his automobile insurance *in return for taking out only one policy instead of two* ... The insured was therefore receiving the benefit of that which he bargained for and should not receive more." *Russell v. State Auto. Mut. Ins. Co.,* 422 S.E.2d at 807.

As in *Russell,* the Plaintiff in this case received a multi-car discount "in return for taking out only one policy instead of two." The Plaintiffs should not receive more than the benefit of their bargain because of the vagaries of Allstate's computer software program. The Court concludes that Plaintiffs are only covered by one policy. As a result the *Youler* decision is inapplicable and the Defendants are limited to total underinsured coverage of $100,000.

Accordingly the Court GRANTS the Plaintiff's motion for summary judgment and DENIES the Defendants' motion for summary judgment. The Clerk is directed to send a copy of this Order to counsel of record.

---

setoff against the insured's policy or any other policy."

**2.** See the affidavit of Kenneth Whitt, a "marketing underwriter" for Allstate.