# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**James E. Phillips, II,**
**Plaintiff Below, Petitioner**

**vs.)  No. 19-0610** (Kanawha County 17-C-1153)

**West Virginia Department of**
**Health and Human Resources,**
**d/b/a Mitchell-Bateman Hospital,**
**Defendant Below, Respondent**

**FILED**
**June 18, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner James E. Phillips, II, by counsel Richard W. Walters, appeals the final order of the Circuit Court of Kanawha County that granted summary judgment on the basis of sovereign and qualified immunity in favor of respondent in this civil action stemming from a Master Agreement for services. Respondent the West Virginia Department of Health and Human Resources, d/b/a Mitchell-Bateman Hospital ("DHHR" or "Bateman Hospital"), by counsel Kelly C. Morgan and Kristen V. Hammond, filed a response in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner, a sign language interpreter, entered into a Master Agreement with DHHR, a State agency, to provide sign language interpreter services to deaf and hearing-impaired patients at Bateman Hospital, a State psychiatric hospital in Huntington, West Virginia. Per the Master Agreement, in effect from April 1, 2016, to December 31, 2016, petitioner was to provide interpreter services "on an as needed basis" and the DHHR had discretionary decision-making authority as to the need for interpreter services at Bateman Hospital. The Master Agreement specifically noted that petitioner was a vendor of the DHHR and further provided that petitioner was "an independent contractor and no principal-agent relationship or employer-employee relationship" was contemplated by the parties.

1

On August 14, 2017, petitioner filed this civil action against the DHHR stemming from the Master Agreement. Petitioner maintained that, during the period provided for by the Master Agreement, he provided only approximately ten hours of service to the DHHR, despite the fact that the DHHR led petitioner to believe that he would provide services a minimum of forty hours per week, or an estimated 1550 hours over the life of the Master Agreement. Petitioner alleged that he forewent other employment opportunities and procured a $1 million dollar insurance policy as required by the Master Agreement, but the DHHR did not fulfill its responsibilities under the Master Agreement. Petitioner sought compensatory damages, lost wages, attorney's fees, and costs from the DHHR. On January 23, 2018, the DHHR filed a motion to dismiss based upon the doctrine of qualified immunity. After the circuit court denied the motion, the parties conducted discovery.

On December 14, 2018, the DHHR filed a motion for summary judgment based upon the doctrines of sovereign and qualified immunity. On January 3, 2019, petitioner filed a motion to amend his complaint to include claims of fraudulent and negligent inducement, concealment, and execution. Although the DHHR objected to this amendment noting the amendment's futility, the circuit court granted the motion and petitioner filed his Second Amended Complaint.[1]

Petitioner's Second Amended Complaint asserted the following causes of action: breach of contract and promissory estoppel; fraudulent inducement, fraudulent concealment, and fraudulent execution; promissory estoppel; and lost wages. In response to petitioner's Second Amended Complaint, the DHHR filed a renewed motion for summary judgment on April 10, 2019. The DHHR argued that dismissal of the complaint was appropriate based upon the doctrines of sovereign and qualified immunity, the gist of the action doctrine, and petitioner's inability to recover attorney's fees and costs. On May 30, 2020, the circuit court entered a final order dismissing petitioner's Second Amended Complaint, with prejudice.

In its final dismissal order, the circuit court found that the State ordinarily enjoys sovereign immunity, unless there is insurance coverage for the claims presented. The circuit court determined that all of petitioner's claims were excluded from insurance coverage pursuant to the State's policy. As to petitioner's breach of contract and promissory estoppel claims, the circuit court found that the DHHR's policy included a clear and unambiguous exclusion from coverage "[t]o any claim(s) based upon or attributable to any allegations or claims that the 'insured' breached the terms of any type or any form of contract, either express or implied, written or oral." Further, as to petitioner's fraudulent inducement, fraudulent concealment, and fraudulent execution claims, the circuit court found that Endorsement #25, Fraud, Dishonesty or

---

[1] Petitioner filed an amended complaint on or about November 20, 2017, shortly after the institution of this litigation. Although the record is unclear as to the date when the second amended complaint was filed, the circuit court granted petitioner's motion to file this amended complaint on or about February 11, 2019.

Criminal Act Exclusion, excluded coverage for these claims.[2] Per the circuit court, petitioner's promissory estoppel claim was precluded by Endorsement #5, which provided that there is no insurance coverage for actions seeking equitable relief. Finally, as to petitioner's claim for lost wages, the circuit court found that the wrongful act coverage provision included an exclusion of coverage "[t]o any claim(s) made against the 'insured' for damages attributable to wages, salaries and benefits."

Additionally, the circuit court found that petitioner's Second Amended Complaint should be dismissed because his claims against the DHHR were barred by the doctrine of qualified immunity.[3] The circuit court noted that whether claims were barred by the doctrine of qualified

_____

[2] Additionally, the circuit court determined that petitioner's tort claims were simply breach of contract claims being "masqueraded as tort claims." Thus, the circuit court found that petitioner's fraudulent inducement; fraudulent concealment; fraudulent execution; and negligent inducement/concealment/execution claims duplicated his breach of contract claim and were barred based upon the gist of the action doctrine.

[3] The circuit court conducted the two-part analysis announced by this Court in syllabus point 10, *West Virginia Regional Jail & Correctional Facility Authority v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014), where we held:

> To determine whether the State, its agencies, officials and/or employees are entitled to immunity, a reviewing court must first identify the nature of the governmental acts or omissions which give rise to the suit for purposes of determining whether such acts or omissions constitute legislative, judicial, executive or administrative policy-making acts or involve otherwise discretionary governmental functions. To the extent that the cause of action arises from judicial, legislative, executive or administrative policy-making acts or omissions, both the State and official involved are absolutely immune pursuant to Syl. Pt. 7 of *Parkulo v. W. Va. Bd. of Probation and Parole*, 199 W.Va. 161, 483 S.E.2d 507 (1996).

And, further:

> To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W.Va. 356, 424 S.E.2d 591(1992). In the absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability.

(continued . . . )

immunity depended on whether (1) the DHHR's actions were discretionary; and if so, (2) whether those actions violated any statutory or constitutional rights or laws that were clearly established and of which a reasonable person would have known or whether those actions were fraudulent, malicious, or oppressive. The circuit court found that the DHHR's determination as to the use of petitioner's independent contractor services "on an as needed basis" was discretionary. Further, the circuit court found that petitioner had failed to establish any statutory or constitutional right that the DHHR violated with respect to him, and that he further failed to offer evidence that the DHHR's actions were fraudulent, malicious, or oppressive as they related to him.

It is from the circuit court's final order that petitioner appeals. On appeal, petitioner asserts three assignments of error based upon his breach of contract and promissory estoppel claims. First, petitioner contends that the circuit court erred when it determined that his claims for breach of contract and promissory estoppel were excluded from coverage by the State's insurance policy and thus barred by sovereign immunity. Second, petitioner maintains that the circuit court erred when it determined that his claims of breach of contract and promissory estoppel were barred by qualified immunity. Finally, petitioner asserts that the circuit court erred when it determined that his claim for promissory estoppel was per se non-actionable against the State and was otherwise barred by the equitable relief exclusion to the State's insurance policy.

On appeal, this Court accords a plenary review to the circuit court's order granting summary judgment: "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W. Va. 189, 451 S.E.2d 755 (1994). In conducting our de novo review, we apply the same standard for granting summary judgment that is applied by the circuit court. Under that standard,

> "'[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Company v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

*Painter*, 192 W. Va. at 190, 451 S.E.2d at 756, syl. pt. 2. In other words,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

*Painter* at 190, 451 S.E.2d at 756, syl. pt. 4. Additionally, we note that "[t]he circuit court's

---

*A.B.* at 497, 766 S.E.2d at 756, syl. pt. 11.

function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but it is to determine whether there is a genuine issue for trial." *Id.* at 190, 451 S.E.2d at 756, syl. pt. 3. Finally, we note that "the party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor. *Anderson [v. Liberty Lobby, Inc.],* 477 U.S. [242,] 252, 106 S.Ct. [2505,] at 2512, 91 L.Ed.2d [202] at 214 [1986]." *Williams v. Precision Coil, Inc.,* 194 W. Va. 52, 60, 459 S.E.2d 329, 337 (1995).

Reviewing the record, we conclude that the circuit court appropriately found that petitioner's complaint failed to present a genuine issue for trial. We have long held that the State and its agencies are entitled to the benefit of sovereign immunity pursuant to Article VI, § 35 of the Constitution, which provides that "[t]he State of West Virginia shall never be made defendant in any court of law or equity[.]" Consistent with the circuit court's final order, this Court has held that this constitutional immunity "can not be waived by the Legislature or any other instrumentality of the State." *Skaff v. Pridemore*, 200 W. Va. 700, 705, 490 S.E.2d 787, 792 (1997). However, "[s]uits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State." Syl. Pt. 2, *Pittsburgh Elevator Co. v. W. Va. Bd. of Regents*, 172 W. Va. 743, 310 S.E.2d 675 (1983).

Citing West Virginia Code § 29-12-1, the circuit court found that "[t]he Legislature created the State Board of Risk and Insurance Management (hereinafter 'BRIM') to purchase and oversee the State's liability insurance." Further, referencing precedent from this Court, the circuit court addressed the latitude vested in BRIM by the Legislature to fix both the scope of coverage and contractual exceptions to that coverage.[4] Specifically, the circuit court's order provided:

> "The Legislature has also vested in [BRIM] considerable latitude to fix the scope of coverage and contractual exceptions to that coverage by regulation or by negotiation of the terms of particular applicable insurance policies." Syl. Pt. 4, in part, *Parkulo v. West Virginia Bd. of Prob. and Parole*, 199 W. Va. 161, 483 S.E.2d 507 (1996). West Virginia Code § 29-12-5 specifically provides that BRIM has "without limitation and in its discretion as it deems necessary for the benefit of the insurance program, general supervision and control over the insurance of state property, activities and responsibilities. . ." Thus BRIM "is not

---

[4] On appeal, petitioner argues that BRIM violated its legislative mandate and exceeded its authority in procuring the breach of contract exclusion, thus rendering the exclusion void. Based upon the record, it does not appear that petitioner argued to the circuit court that the breach of contract exclusion in the DHHR's policy was against public policy or that BRIM exceeded its authority. Instead, petitioner argued that the breach of contract exclusion was invalid because BRIM violated its mandate when it procured the breach of contract exclusion. Although we need not consider this argument which was not raised below, we note that petitioner's argument is contrary to the express discretion afforded to BRIM by the Legislature.

required to provide insurance for every state property, activity or responsibility" and nothing bars the State or its agencies from relying on its constitutional immunity "against claims or suits arising from or out of any state property, activity or responsibility not covered by a policy or policies of insurance." W.Va. Code § 29-12-5.

The Supreme Court of Appeals of West Virginia has made it clear that "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 5, *Bland v. State*, 230 W. Va. 263, 737 S.E.2d 291 (2012)(quoting Syl. Pt. 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W. Va. 430, 345 S.E.2d 33 (1986), *overruled on other grounds by National Mut. Ins. Co. v. McMahon & Sons*, 177 W. Va. 734, 356 S.E.2d 488 (1987)). Moreover, "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." *Id.* at Syl. Pt. 6 (quoting Syl. Pt., *Keffer v. Prudential Ins. Co.*, 153 W. Va. 813, 172 S.E.2d 714 (1970)).

Plaintiff's Second Amended Complaint asserts claims of (1) breach of contract and (2) promissory estoppel which are based upon and attributable to DHHR's alleged breach of the terms of the Agreement. DHHR's insurance policy in effect at the time of the alleged breach of the Agreement and alleged detrimental reliance provided liability insurance for any "Wrongful Act" of the "insured". "Wrongful Act" is defined under the applicable insurance policy as "any actual or alleged act, breach of duty, neglect, error, misstatement, misleading statement or omission by the 'insured(s)' in the scope of duties for the 'Named Insured.'" In this case, the Named Insured is DHHR. However, the applicable insurance policy includes a clear an[d] unambiguous exclusion of coverage "[t]o any claim(s) based upon or attributable to any allegations or claims that the "insured" breached the terms of any type or any form of contract, either express or implied, written or oral." WHEREFORE, for good cause shown, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's claims of (1) breach of contract and (2) promissory estoppel are hereby DISMISSED, because DHHR is entitled to the benefit of sovereign immunity since there is no insurance coverage on these claims.

Further, the circuit court did not err in determining that petitioner's claims were barred by the doctrine of qualified immunity. In a recent decision we noted:

Several principles of law guide our resolution of the qualified immunity issue in this case. To begin, as a general matter "[q]ualified immunity is an immunity afforded to government agencies, officials, and/or employees for discretionary activities performed in an official capacity." *Maston v. Wagner*, 236 W.Va. 488, 499, 781 S.E.2d 936, 947 (2015). We have held that

In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a

State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29–12A–1, *et seq.*, and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.

Syl. pt. 6, *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995). This Court has also stated that

[t]o determine whether the State, its agencies, officials, and/or employees are entitled to immunity, a reviewing court must first identify the nature of the governmental acts or omissions which give rise to the suit for purposes of determining whether such acts or omissions constitute legislative, judicial, executive or administrative policy-making acts or involve otherwise discretionary governmental functions.

Syl. pt. 10, in part, *W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014). Additionally, we have indicated that,

To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability.

Syl. pt. 11, *W. Virginia Reg'l Jail*, 234 W. Va. 492, 766 S.E.2d 751.

*Goodwin v. Bd. of Educ. of Fayette Cty.*, 242 W. Va. 322, __, 835 S.E.2d 566, 573-74 (2019).

The circuit court applied established jurisprudence from this Court in finding that the DHHR was entitled to qualified immunity. To that end, the circuit court found that neither party disputed that the DHHR had discretion as to when to utilize petitioner's services, where the Master Agreement specifically referenced that petitioner could be used "on an as needed basis." Further, the circuit court found that petitioner had failed to establish any statutory or constitutional right that the DHHR violated with respect to him and that he further failed to offer evidence that the DHHR's actions were fraudulent, malicious, or oppressive as they related to him.

Finally, the circuit court appropriately ruled that petitioner cannot maintain a claim of promissory estoppel against the DHHR. As it relates to petitioner's claims of promissory estoppel, the circuit court relied upon jurisprudence from this Court where we announced that "promissory estoppel *per se* cannot be urged against the State when functioning in its governmental capacity." *Pryor v. Gainor*, 177 W. Va. 218, 224 n.7, 351 S.E.2d 404, 410 n.7

(1986). Moreover, the circuit court ruled that Endorsement #5 of the DHHR's policy unambiguously provides that there is no coverage for individuals, like petitioner, who seek equitable relief under the policy.

Applying a de novo review to the facts, we conclude that the circuit court did not err in dismissing petitioner's complaint. For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 18, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

8